UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KATHYE M. ALMON                                          CIVIL ACTION

VERSUS                                                   NO. 07-7063

THE HIGBEE COMPANY d/b/a                                 SECTION "N" (5)
DILLARD'S, and/or DILLARD'S INC.

## ORDER AND REASONS

Before the Court is the **Motion to Compel Arbitration, Stay Proceedings and for Dismissal (Rec. Doc. 7)**. After reviewing the memoranda of the parties, the supporting exhibits, and the applicable law, the Court grants the motion to the extent that the parties are compelled to submit to mandatory arbitration. This matter shall be stayed pending the completion of the arbitration proceeding, pursuant to 9 U.S.C. § 3.

### I.   Background

On July 12, 2001, as a condition of her employment with Defendants, The Higbee Company and Dillard's Inc. (hereinafter, collectively "Dillard's"), Plaintiff Kathye M. Almon (hereinafter, "Almon") signed a document entitled "Acknowledgment of Receipt of Rules for Arbitration" (hereinafter, "the Agreement"). (Exhibit 1 to motion). This document stated, in pertinent part:

> *The arbitration process offers a quick and fair way to resolve disagreements related to employment. This Agreement contains the rules and procedures Dillard's and associates covered under the Agreement must follow to resolve any covered claims through arbitration. This Agreement does not waive anyone's substantive legal rights, nor does the Agreement create or destroy*

> *any rights. It merely changes the forum where the dispute is resolved and the procedures to be followed. Arbitration does not prevent an associate from filing a charge with an administrative agency like the Equal Employment Opportunity Commission.*
>
> *Effective immediately, all employees (as hereinafter defined) of Dillard's Inc., its affiliates, subsidiaries and Limited Liability Partnerships (the "Company") shall be subject to the RULES OF ARBITRATION ("the "Rules") described below. Employees are deemed to have agreed to the provisions of the Rules by virtue of accepting employment with the Company and/or continuing employment therewith.*

(Exhibit 1 to motion, emphasis in original). The Agreement further stated in full caps just above Almon's signature, "I ACKNOWLEDGE RECEIPT OF THE AGREEMENT TO ARBITRATE CERTAIN CLAIMS AND RULES OF ARBITRATION." (*Id.*). The Rules of Arbitration further explain:

> Arbitration applies to any claim that could be made in a court of law, including the following Covered Disputes:
>
> • Discrimination or harassment on the basis of race, sex, religion, national origin, age, disability or other unlawful basis (for example, in some jurisdictions, protected categories include political affiliation, familial status or sexual orientation).

(Exhibit 2 to motion). In the present suit, Almon claims she was discriminated against on the basis of her age and disability.

## II.  Law and Analysis

In the instant motion, Dillard's claims that this Court should (1) compel arbitration pursuant to 9 U.S.C. § 4; (2) stay all proceedings pending binding arbitration pursuant to 9 U.S.C. § 3; and (3) dismiss this case insofar as all of the issues raised in Almon's Complaint for Damages and Jury Demand are required to be submitted to arbitration. Dillard's argues that Almon agreed to the arbitration agreement, evidenced by her signature and her continued employment with the company,

and should be bound by it, as her claims in this suit are covered by the Agreement. In opposition, Almon executed an affidavit wherein she claims that she essentially claims she signed the acknowledgment under the threat of termination and with the understanding that it was of no consequence to her employment or her rights as an employee. Almon asserts that she did not knowingly agree to arbitrate the claims she alleges in this lawsuit. (*Id.*).

The Federal Arbitration Agreement ("FAA"), 9 U.S.C. § 1 *et seq.*, states, in pertinent part:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Employment contracts that require arbitration of employment-related disputes, including employment discrimination suits, are enforceable under the Federal Arbitration Act. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (holding that employee who signed arbitration agreement was required to arbitrate an age discrimination suit dispute under the ADEA). Due to the liberal policy in favor of arbitration, the party objecting to arbitration bears the burden to show that the Agreement is invalid. *See Walton v. Rose Mobile Homes, LLC.*, 298 F.3d 470, 473 (5th Cir.2002).

To determine whether disputes are subject to mandatory arbitration under the FAA, courts must determine whether contracts support valid agreements to arbitrate the subject matters of the disputes. *Payne Webber, Inc. v. Chase Manhattan Private Bank (Switzerland)*, 260 F.3d 462 (5th Cir.2001). To decide whether the parties agreed to arbitrate a certain matter, courts generally should

apply ordinary state law principles that govern the formation of contracts. *See, e. g., First Options of Chicago. Inc. V. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995);*Volt Information Sciences. Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). Generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening the FAA. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 686-687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

Under Louisiana law, valid contract formation must have the following four elements: (1) the parties had the capacity to contract; (2) the parties freely gave their mutual consent to the contract; (3) the parties had cause or reason for obligated themselves; and (4) the contract has a lawful purpose. LA. CIV. CODE, arts.1918, 1927, 1966, 1971, 2029 cmt. b. (1991). *See also Crowe v. Homesplus Manufactured Hous. Inc.*,38,382 (La. A.. 2 Cir. 6/21/04), 877 So.2d 156 . A court may invalidate a contract under Louisiana law on grounds when a contract is unconscionable. *Lafleur v. Law Offices of Anthony G. Buzbee, P.C.*, 2006-0466 (La. App. 1 Cir. 3/23/07), 960 So.2d 105, 112.

Specifically, Almon argues *several* different theories in an attempt to invalidate the Agreement:

### A.   Fraudulent Inducement/ Economic Duress

First, Almon claims the Arbitration Agreement is invalid because she was forced to enter into it by fraud and coercion while under economic duress (the threat of being terminated). Essentially, she contends that because she had to sign the arbitration agreement to continue her employment (and to continue receiving a paycheck), she signed the Agreement under the threat of "economic duress." This argument fails because both the Supreme Court and the Fifth Circuit have, on

numerous occasions, allowed employers to make mandatory arbitration a condition of employment. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Marino v. Dillards, Inc.*, 413 F.3d 530 (5th Cir. 2005); *Carson v. Higbee Company*, 149 Fed. Appx. 289 (5th Cir. 2005); *May v. Higbee Company*, 372 F.3d 757(5th Cir. 2004); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir. 1999). To allow Almon to succeed on this argument would fly in the face of Supreme Court and Fifth Circuit precedent, which allows employers to require employees to sign mandatory arbitration agreements in exchange for continued employment. Furthermore, Almon had the option of not signing the Agreement and finding work elsewhere.

Next, Almon claims she was fraudulently induced into signing the Agreement by her manager, Thiese McDonald, who allegedly indicated to her that she had nothing to worry about as long as she signed the Agreement. (Exhibit to opposition). This statement allegedly made by her supervisor did not relieve Almon of the responsibility to read the acknowledgment and understand its terms before signing it. After all, it is well settled that an individual who signs a written instrument is presumed to know its contents and cannot avoid its obligations by arguing alter that she did not read it, that she did not understand it, or that the other party failed to explain it to her. *See Tweedel v. Brasseaux*, 433 So.2d 133, 137 (La.1983).

      **B.**     **Error or Mistake**

Almon claims she signed the form in error or with the mistaken belief that she was not foregoing any constitutional rights, including her right to a jury trial. "Error can vitiate consent but only 'when it concerns a cause without which the obligation would not have been incurred.'" *Campo-Wong v. Bond*, 2002 WL 31683549 (E.D. LA. Nov. 26, 2002) (quoting LA. CIV. CODE Art. 1949). Here, Almon claims she did not fully understand the impact of the Arbitration Agreement.

5

She also claims that she did not receive the Rules of Arbitration until after she signed the acknowledgment form. However, the fact remains that she did, indeed, sign the acknowledgment form, which clearly evidenced her receipt of the Rules of Arbitration and her consent to abide by those rules. As Judge Berrigan reasoned in *Campo-Wong*, if Plaintiff's uninformed consent to the Arbitration Agreement could be vitiated, "it would require a showing that inclusion of the arbitration agreement would have precluded her signing the employment contract altogether." 2002 WL 3168359. This essentially would require Almon to claim that she would not have accepted continued employment had she understood the document she signed. She has not argued this, and such cannot be reasonably inferred under these circumstances.

### C. Contract of Adhesion/Lack of Mutuality

Almon asserts that there was a lack of mutuality in that she had no right to negotiate any portion of the acknowledgment form, which she was forced to sign. "A contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party." *Ndanyi v. Rent-A-Center, Inc.*, 2004 WL 3254516 (E.D. La. Dec. 11, 2004). As Professor Saul Litvinoff explains:

> Contracts are not always formed through a bargaining process. Owing to the necessities of modern life a particular kind of contract has been developed where one of the parties is not free to bargain. That occurs when a business concern carries out its operation through a very large number of contracts entered into with innumerable co-contractants, as is the case with airlines, public utilities, railroad or insurance companies....
>
> In that kind of situation the lack of balance between the parties' positions is evident, as one of them, quite unquestionably, is in a position stronger than the other's. The party in the weaker position is left with no other choice than to adhere to the terms proposed by the other, hence, "contract of adhesion," a successful technical expression coined by a prominent French writer....

*Aguillard v. Auction Management Corp.*, 2004-2804 (La. 6/29/05), 908 So.2d 1, 9 (quoting Saul Litvinoff, *Consent Revisited: Offer Acceptance Option Right of First Refusal and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations*, 47 La.L.Rev. 699, 757-59 (1986-1987)).  The law clearly states that a party who signs a document is presumed to know its contents and cannot avoid its obligations by arguing that she did not read it and/or understand it. *See Tweedel*, 433 So.2d at 137.  Here, it is undisputed that Almon signed the Acknowledgment of Receipt of Rules for Arbitration, which indicated that her continued employment evidenced her consent to abide by the Rules of Arbitration.  There is no evidence to indicate that Dillard's was in such a superior bargaining position as to render Almon a far weaker party or the contract adhesionary.  There is nothing in the acknowledgment form that calls into question the validity of Almon's consent to the Rules of Arbitration as indicated by her signature *and* by her continued employment. Thus, as the Louisiana Supreme Court concluded in the *Aguillard* case, the doctrine of contract of adhesion is inapplicable here.

      **E.**    **Arbitration Fee Poses Financial Burden**

Last, Almon complains that the Rules of Arbitration require her to share in the cost of arbitration, which could require her to pay a costly sum towards the costs of arbitration.  However, Dillard's points out that Rules of Arbitration indicate that, as a non-manager, Almon's share of the arbitration fee is only $100:

> If you are a nonmanagement associate, your share of the Arbitration fee is $100; management associates pay $250. Your form and check should be sent via certified or registered mail, return receipt requested. The company will pay to AAA the balance of the Arbitration fee.

(Exhibit 2 to motion). This $100 fee cost is clearly not a prohibitive expense.

### III.  Conclusion

The Arbitration Agreement and program here, which was signed and acknowledged by Almon, is unambiguous and is identical to others that have been upheld by the Fifth Circuit on numerous occasions. *See Marino*, 413 F.3d 530; *Carson*, 149 Fed. Appx. 289; *May v. Higbee Company*, 372 F.3d 757(5th Cir. 2004). The acknowledgment form signed by Almon clearly states that continued employment is a means of consent to the Rules of Arbitration. Although Almon makes every argument possible in an attempt to vitiate her consent, she fails at overcoming the strong presumption in favor of arbitration. The Agreement is valid under Louisiana law, and the claims for age and disability discrimination asserted herein are covered by the Arbitration Agreement. Thus, pursuant to 9 U.S.C. § 3, arbitration is compelled, and this matter shall be stayed pending the completion of the arbitration proceedings.

For the reasons stated herein, **IT IS ORDERED** that **Motion to Compel Arbitration, Stay Proceedings and for Dismissal (Rec. Doc. 7)** is **GRANTED** to the extent that arbitration of the claims asserted herein is compelled.

**IT IS FURTHER ORDERED** that this matter shall be **STAYED** and **STATISTICALLY CLOSED** without prejudice to the right of either party to re-open the case following the conclusion of the arbitration proceedings.

New Orleans, Louisiana, this 4th day of January, 2008.

                                        **KURT D. ENGELHARDT**
                                        **UNITED STATES DISTRICT JUDGE**